UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EVELYN DELOACH,                           Case No. 1:13-cv-170
          Plaintiff,                      Beckwith, J.
                                          Litkovitz, M.J.
     vs

COMMISSIONER OF                           **REPORT AND**
SOCIAL SECURITY,                          **RECOMMENDATION**
          Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16) and the

Commissioner's response in opposition. (Doc. 19).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in May 2009, alleging disability since

September 7, 1995 due to mood changes and "problems comprehending some things." (Tr. 143,

170). These applications were denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a de novo hearing before administrative law judge (ALJ)

John S. Pope. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing.

On August 26, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The [plaintiff] engaged in substantial gainful activity during the following periods: from 2005 through March 2, 2009 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b), and 416.971 *et seq.*).

3. However, there have been continuous 12-month periods, particularly since March 2, 2009, during which the [plaintiff] did not engage in substantial gainful activity. The remaining findings address the periods [during which plaintiff] did not engage in substantial gainful activity.

4. The [plaintiff] has the following severe impairments: depression, anxiety, [and] borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

5. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to jobs involving only occasional and superficial contact with the public, coworkers, and supervisors, and she must not be subject to strict time or production requirements.

7. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

8. The [plaintiff] was born [in] . . . 1980, and was 14 years old, which is defined

---

[1]Plaintiff's past relevant work was as a cleaner, packer, and childcare attendant. (Tr. 29, 171, 214).

3

as a younger individual age 18-49, on the alleged disability onset date. At the application date, the claimant was 28 years old (20 CFR 404.1563 and 416.963).

9. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

12. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 7, 1995, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 18-30).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. .

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 11,000 light jobs in the regional economy, such as packer, machine operator, and bench hand. (Tr. 63).

4

. ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff contends: (1) the ALJ improperly weighed the medical opinions and failed to adhere to the "treating physician rule"; (2) the ALJ failed to consider the longitudinal treatment in weighing the medical opinion evidence; (3) the ALJ erred in his credibility analysis; and (4) the ALJ erred in finding that plaintiff's impairments did not meet or equal Listing 12.05C. (Doc. 16). As plaintiff's first two assignments of error regard how the ALJ weighed the medical opinions of record, they will be addressed together.[3]

1. The ALJ did not err in weighing the medical opinions of record.

Plaintiff contends the ALJ erroneously discounted the opinions of Anthony Whitaker,

_____

[3] The Court will take plaintiff's remaining assignments of error out of turn and will address her listings error second and her credibility error last.

M.D., her treating psychiatrist, as he is the only medical source with a treating relationship with plaintiff.  Plaintiff further asserts the ALJ erred by giving greater weight to the opinions of the consultative examining psychologist, George Lester, Psy.D., and the non-examining state agency psychologist, Kristen Haskins, Psy.D., as their opinions were, respectively, based on the results of a single examination and an incomplete review of the evidence.  Plaintiff maintains the ALJ also erred by failing "to consider the longitudinal treatment" evidence which supports giving the most or controlling weight to Dr. Whitaker's opinions.  (Doc. 16 at 9-13).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec'y*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec'y*, 710 F.3d 365, 376 (6th Cir. 2013) (citing

former 20 C.F.R. § 404.1527(d)(2)[4]).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance

the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the

opinion.  *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the

length, nature and extent of the treatment relationship and the frequency of examination.  20

C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the

ALJ must consider the medical specialty of the source, how well-supported by evidence the

opinion is, how consistent the opinion is with the record as a whole, and other factors which tend

to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6);

*Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  The ALJ must give "good reasons" for not

according controlling weight to a treating physician's opinion.  *Wilson*, 378 F.3d at 544.  The ALJ

must likewise apply the factors set forth in §§ 404.1527(c)(3)-(6) and 416.927(c)(3)-(6) when

considering the weight to give a medical opinion rendered by a non-treating source.  20 C.F.R. §

404.1527(c).  When considering the medical specialty of a source, the ALJ must generally give

"more weight to the opinion of a specialist about medical issues related to his or her area of

specialty than to the opinion of a source who is not a specialist."  20 C.F.R. §§ 404.1527(c)(5),

416.927(c)(5).

     Dr. Whitaker is plaintiff's treating psychiatrist at Centerpoint Health (Centerpoint).  The

pertinent evidence from Dr. Whitaker includes his treatment notes from October 2009 to August

2011 (Tr. 421-62); an October 20, 2010 Medical Functional Capacity Assessment (Tr. 412-13);

and a March 15, 2011 Mental Impairment Questionnaire (RFC & Listings).  (Tr. 96-101).

---

[4]Titles 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012.  The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c) and 416.927(c).

Plaintiff first began treating with Dr. Whitaker on October 15, 2009. (Tr. 457-60). Dr. Whitaker diagnosed major depressive disorder, severe, without psychosis, marijuana abuse, caffeine abuse, nicotine dependency and prolonged bereavement. (Tr. 458). Dr. Whitaker assigned a Global Assessment of Functioning (GAF) score of 40,[5] prescribed Remeron, and recommended continued counseling. (Id.). The treatment notes from Centerpoint and Dr. Whitaker show that plaintiff generally denied relationships outside of her mother and children; reported continuing depression and anxiety; self-isolated (avoids others); watched television and walked her children to the school bus; and slept 12 to 14 hours daily. Her marijuana use was in remission. (Tr. 262-409, 415-20, 423-62). The treatment notes also show that plaintiff reported infrequent panic attacks and having a "good" mood in March, May, and June 2011. (Tr. 425, 427-28, 430). Dr. Whitaker observed that plaintiff had good eye contact and was cooperative in her sessions (Tr. 425, 430); limited to fair insight and judgment (Tr. 425, 428, 430); and presented with an affect Dr. Whitaker described as ranging from reflective, blunted, to pleasant. (Tr. 428, 430). Treatment notes from October 2010 to January 2011 include Dr. Whitaker's clinical findings that plaintiff presented with a labile and tearful affect, but plaintiff continued to report a good or decent mood, except in December 2010 when she reported being in a bad mood because of her current situation. (Tr. 434, 436, 438). Earlier progress notes from June and July 2010 include similar findings and show plaintiff reported being depressed but in a "decent" to "pretty good

---

[5]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." Id. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 34. Individuals with scores of 31 to 40 are classified as having some impairment in reality testing or communication (e.g., illogical or irrelevant speech) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g., avoiding friends and neglecting family). Id. Individuals with scores of 41 to 50 are classified as having "serious symptoms or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...." Id.

mood." (Tr. 442, 444). On March 1 and 30, 2011, Dr. Whitaker advised plaintiff to engage in vocational training. (Tr. 431, 433).

On October 20, 2010, Dr. Whitaker completed a Medical Functional Capacity Assessment for the local county Department of Job and Family Services. Dr. Whitaker found that plaintiff had marked impairments in seven of 20 categories with moderate impairments in the remaining 13. Dr. Whitaker did not provide any narrative explanation for his findings and he left blank the portion of the form requesting that he "insert or attach [his] mental status exam copy here." (Tr. 412-13).

On March 9, 2011, Dr. Whitaker completed a Mental Impairment Questionnaire on plaintiff's behalf. (Tr. 96-101). Dr. Whitaker reported that plaintiff had twice monthly counseling and monthly psychiatric appointments since July 2009. (Tr. 96). He diagnosed plaintiff with major depressive disorder without psychotic features and anxiety disorder. (*Id.*). Dr. Whitaker noted that plaintiff only attended her medical appointments "sporadically, but always rescheduled and that her prognosis was fair. (*Id.*). According to Dr. Whitaker, plaintiff presented with labile affect and depressed mood, but clean appearance, normal thought content, and a history of suicidal ideation. (*Id.*). Dr. Whitaker opined that plaintiff was unable to meet competitive standards in eight of the 16 mental abilities and aptitudes needed to do only unskilled work; unable to meet competitive standards in three of four mental abilities and aptitudes needed to do semiskilled and skilled work; and unable to meet competitive standards. She had no useful ability to function in three of five abilities and aptitudes needed to do particular types of jobs. (Tr. 98-99). To support his opinion, Dr. Whitaker explained that plaintiff's "emotional lability interferes with her interactions with others and ability to cope with unfamiliar situations." (Tr. 99). Dr. Whitaker indicated that plaintiff did not have a low IQ or reduced intellectual functioning. (*Id.*).

9

He concluded that plaintiff had moderate restrictions in activities of daily living; marked limitation in maintaining social functioning; marked limitation in maintaining concentration, persistence, or pace; and three episodes of decompensation each of at least 2 week duration within the past year. (*Id.*). Dr. Whitaker also indicated that plaintiff had a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. (Tr. 100). Dr. Whitaker determined that plaintiff would be absent from work more than four days per month due to her impairments or treatment. (*Id.*).

The only other medical evidence regarding plaintiff's mental impairments are the report of consultative examining psychologist, Dr. Lester (Tr. 430-36), and the mental RFC assessment completed by the state agency non-examining psychologist, Dr. Haskins. (Tr. 238-55).

Dr. Lester examined plaintiff on behalf of the state agency on July 13, 2009. (Tr. 230-36). Plaintiff's mother accompanied her and completed the forms for her. (Tr. 230). Plaintiff reported that she quit school in the 7th grade to help her fourteen year old sister with her baby. She also reported that she fought a lot at school because she didn't get along with people. (Tr. 231). Plaintiff stated she was a slow learner but not in special classes. (*Id.*). Plaintiff reported using marijuana whenever she could afford it. (*Id.*). At the time of this evaluation, she was a childcare provider for Human Services, but had no placements since March. (Tr. 232). Plaintiff cried during the evaluation and resisted responding to a number of questions; responded to other questions in a brief, vague manner; and was defensive and smart-aleck on occasion. (*Id.*). IQ testing revealed a verbal score of 68, a perceptual reasoning score of 69, and a Full Scale IQ of 65. (Tr. 234). Dr. Lester believed the scores to be a low estimate of plaintiff's actual functioning. (*Id.*). Dr. Lester noted that plaintiff reported that she took care of her children during the day and

10

had no difficulty with household chores; she reported no memory problems; and stated that she could use public transit alone. (*Id.*). Dr. Lester diagnosed plaintiff with a depressive disorder not otherwise specified with anxious features, IQ estimated in the borderline range, and a personality disorder not otherwise specified with anti-social features. (*Id.*). He assigned a GAF score of 50. Dr. Lester concluded that plaintiff was moderately impaired in her ability to relate to others; to understand, remember and follow directions; and to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks. He opined that plaintiff's ability to withstand the stress and pressures associated with day-today work activities was severely impaired. (Tr. 235-36).

Dr. Haskins reviewed the record in August 2009 and opined that plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 252). Dr. Haskins gave great weight to the opinion of Dr. Lester. (Tr. 240). Dr. Haskins' summary of the record identified the many inconsistencies she found. (*Id.*). Dr. Haskins concluded that plaintiff's statements are partially credible. (*Id.*). Dr. Haskins opined that plaintiff retains the ability to complete simple and some moderately complex tasks, with little contact with the public, that are not fast-paced, without strict time or production requirements, and where she could work independently with only superficial relating to others and with no over the shoulder supervision. (Tr. 241).

The ALJ gave "little weight" to Dr. Whitaker's October 20, 2010 opinion because it consisted solely of check-marked responses and included no narrative explanation for his determinations. (Tr. 19, 26, 28). The ALJ determined that Dr. Whitaker's March 2011 opinion could not be afforded "controlling or significant weight" because: (1) it appeared to rely primarily

11

on plaintiff's subjective reports rather than objective evidence; (2) Dr. Whitaker's findings that plaintiff had marked limitations were inconsistent with his treatment notes; (3) there was no evidence in the record supporting his finding that plaintiff had suffered from any episodes of decompensation of extended duration; and (4) the opinion was inconsistent with Dr. Whitaker's recommendations that plaintiff engage in vocational and job skills training. (Tr. 20, 28).

In contrast, the ALJ found that Dr. Haskins' opinion was "cogent and persuasive" and gave it "significant weight." The ALJ's determination appears to be based largely on his finding that plaintiff's subjective statements regarding her mental functional capacity were not credible and were inconsistent with other record evidence. The ALJ also afforded "significant weight" to Dr. Lester's opinion that plaintiff could perform at least simple repetitive work tasks. (Tr. 28). For the following reasons, the undersigned finds that ALJ complied with the pertinent regulations in weighing these opinions and that his findings are substantially supported by the record.

While plaintiff argues the ALJ impermissibly rejected Dr. Whitaker's opinions because they were "form" opinions and the state agency opinions are also often just "form" opinions (Doc. 16 at 10-11), this is an inaccurate representation of the ALJ's decision. The ALJ did, indeed, give "little weight" to Dr. Whitaker's October 2010 opinion that plaintiff had marked limitations in, *inter alia*, her ability to maintain attention and concentration and to respond appropriately to changes in the work setting because it was a "form" opinion, but more importantly because Dr. Whitaker provided no narrative explanation supporting his findings. *See* Tr. 19, 28, 412. When asked to write comments regarding plaintiff's mental status examination, Dr. Whitaker left the entire section blank. (Tr. 413). The supportability of a treating physician's opinion is one of the factors an ALJ should consider in determining how much weight to afford it. *See* 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. As

12

Dr. Whitaker did not provide any explanation for or cite to any other evidence supporting his October 2010 opinion, the ALJ's determination that it was deserving of "little weight" is substantially supported. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal citations and quotations omitted). Moreover, as discussed below in connection with Dr. Whitaker's March 2011 opinion, his October 2010 is inconsistent with other record evidence including plaintiff's statements, the other medical opinions, and Dr. Whitaker's own treatment notes.

The ALJ's decision to give "little weight" to Dr. Whitaker's March 2011 opinion is also supported by substantial evidence. The ALJ reasonably determined that the opinion was inconsistent with and not supported by the progress notes from Centerpoint which suggested that plaintiff's mood and condition were improving. For example, while Dr. Whitaker reported that plaintiff had a labile affect, depressed mood, agitated behavior; a history of suicidal ideation; and that her emotional lability interfered with her interactions with others (Tr. 96), these findings are inconsistent with his treatment notes. Though plaintiff presented as depressed and with a labile and tearful affect in 2010 and early 2011 (Tr. 434, 436, 438, 442, 444), she consistently reported "good" moods in 2011 and Dr. Whitaker described her as cooperative, with a pleasant affect, and with limited to fair insight and judgment. (Tr. 425, 427-28, 430). Further, Dr. Whitaker's opinion that plaintiff's mental impairments were functionally disabling is inconsistent with his treatment recommendations that plaintiff start vocational training. The ALJ reasonably determined that Dr. Whitaker's suggestion reflected his belief that plaintiff was capable of employment. *See* Tr. 28, 431, 433. Given the inconsistencies between Dr. Whitaker's March 2011 opinion regarding plaintiff's affect and mood and his observations as reflected by the later

treatment notes, including his recommendations that she begin job training, the ALJ's decision to give it "little weight" is substantially supported. *See Kinsella*, 708 F.2d at 1059. *See also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (whether a treating physician's opinion is consistent with other record evidence is a factor to consider in weighing the opinion).

The ALJ also properly determined that Dr. Whitaker's opinion lacked support such that it was not entitled to "controlling or significant weight." (Tr. 28). The ALJ identified that Dr. Whitaker's opinion that plaintiff experienced three episodes of decompensation within a 12 month period each of at least two weeks duration was completely unsupported by the record evidence. (Tr. 20, citing Tr. 99). Review of the record supports the ALJ's finding that plaintiff has not been hospitalized, required acute crisis or inpatient treatment due to her mental impairments, attempted suicide, or been treated for suicidal ideation. *See* Tr. 20. Dr. Whitaker's opinion in this regard thus appears to be without any evidentiary basis. Likewise, there is no report or observation of suicidal ideation in any of Dr. Whitaker's treatment notes. *See* Tr. 423, 425, 428, 430, 432, 434, 436, 438, 442, 444, 446, 457. The only evidence which even remotely supports this opinion is Dr. Lester's consultative examination report wherein he noted that plaintiff "denies suicidal ideation. She admits that she occasionally thinks about it [but] would never do anything about the thoughts." (Tr. 232). Notes from Centerpoint show that plaintiff's case manger listed as a strength plaintiff's ability "to manager her thoughts and not take the initiative to hurt herself or find others to hurt them. Her mother and her sons are her reason for living." (Tr. 417). Given this evidence, Dr. Whitaker's opinion that plaintiff has a history of suicidal ideation lacks support and is inconsistent with the Centerpoint treatment notes. It was therefore reasonable for the ALJ to discount Dr. Whitaker's opinion on this basis. *See* 20 C.F.R.

14

§§ 404.1527(c)(3), 416.927(c)(3) (the ALJ may discount the opinion of a treating physician where it is not well-explained and supported by clinical observations).

The ALJ also gave "little weight" to Dr. Whitaker's opinion due to the doctor's apparent reliance on plaintiff's subjective reports as opposed to clinical or objective evidence. *See* Tr. 28. Plaintiff argues that the ALJ erred in this regard as psychiatrists' opinions are by definition based on their patients' subjective statements during counseling sessions. (Doc. 16 at 11). The undersigned recognizes that the opinions of mental health providers are necessarily dependent on the subjective statements of their patients as "talk therapy" is often the primary tool employed by professionals treating mental health impairments. *See Warford v. Astrue*, No. 09-cv-52, 2010 WL 3190756, at *6 (E.D. Ky. Aug. 11, 2010) (relying on *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)). However, as noted above, Dr. Whitaker's opinions do not reflect plaintiff's improvements as reflected in later treatment notes and his findings are not well-supported by other record evidence. The undersigned further notes that Dr. Whitaker's March 9, 2011 opinion (Tr. 96-101) is inconsistent with his March 1, 2011 treatment notes. *Compare* Tr. 97 (Dr. Whitaker opined that plaintiff has a "pervasive loss of interest in almost all activities"; "intense and unstable interpersonal relationships"; and suicidal thoughts) *with* Tr. 432 (plaintiff reported being "comfortable at her mother's place," expressed interest in connecting with her mother, and denied suicidal thoughts and Dr. Whitaker observed plaintiff as presenting with a better mood, being at ease, and more stable and recommended that she work with her case manager to get vocational training). The ALJ is not required to accept medical opinions from mental health providers which are based on plaintiff's subjective complaints that are not supported by clinical observations. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th Cir. 2010). It was therefore reasonable for the ALJ to give Dr. Whitaker's opinions less weight as they were not

15

supported by record evidence, inconsistent with the treatment records and, in the case of the October 2010 opinion, not well-explained.

Further, the ALJ's decision to give "significant weight" to the opinions of Dr. Lester and Dr. Haskins is substantially supported. Dr. Lester's opinion was based on his July 13, 2009 examination of plaintiff at which she was initially relaxed but "more closed as she began to cry . . . . and no more than grudgingly cooperative." (Tr. 232). Dr. Lester noted that plaintiff gave "relevant and coherent" responses to questions but "gave up easily" and was occasionally "defensive and smart-aleck. . . ." (*Id.*). Plaintiff presented with a "constricted affect," reported loss of interest in previously enjoyed activities, and depression and sadness. (*Id.*). However, she reported no difficulty with decision-making and said she was not "worrisome," and Dr. Lester observed that plaintiff did not present with any overt signs of anxiety. (Tr. 232-33). Though plaintiff reported that she becomes quickly annoyed, she stated that she is able to control her temper. (Tr. 233). Based on this examination, Dr. Lester opined that plaintiff had no more than moderate impairments in her abilities to relate to others; understand, remember, and follow instructions; or maintain attention, concentration, persistence and pace to perform routine work tasks. (Tr. 235-36). Dr. Lester determined that plaintiff would be capable of performing "at least simple repetitive work tasks" and that she "may fare best with duties which do not necessitate a great deal of public interaction." (Tr. 236).

Dr. Haskins based her opinion on plaintiff's reports to the Social Security Administration and Dr. Lester's examination and similarly determined that plaintiff was moderately limited in her abilities to maintain social functioning and concentration, persistence or pace; Dr. Haskins further opined that plaintiff was mildly limited in her activities of daily living and had no episodes of decompensation. (Tr. 240, 252). Dr. Haskins noted that plaintiff's statements were inconsistent

16

regarding the extent of her education; whether she was in a specialized education program while in school; and her use of marijuana. (Tr. 240).

In deciding to give "significant weight" to Dr. Haskins' opinion, the ALJ noted that it was "cogent and persuasive" and well-supported by Dr. Lester's examination and the identified credibility factors. (Tr. 28). Plaintiff does not assert that either Dr. Lester or Dr. Haskins improperly characterized the results of her consultative examination. Rather, plaintiff's only argument as to these opinions is that the ALJ's RFC failed to incorporate any limitations based on plaintiff's moderate limitations in her ability to maintain concentration, persistence or pace and, thus, the ALJ appears to have selectively adopted only portions of Dr. Lester's and Dr. Haskins' opinions. *See* Doc. 16 at 11-12. Plaintiff's assertion is contradicted by a plain reading of the ALJ's decision.

In formulating plaintiff's RFC, the ALJ incorporated Dr. Haskins' and Dr. Lester's findings that plaintiff has moderate limitations in her ability to maintain social functioning and concentration, persistence or pace by limiting her to "only occasional and superficial contact with the public, coworkers and supervisors" and determining that "she must not be subject to strict time or production requirements." (Tr. 22). The ALJ's RFC finding that plaintiff cannot do work where she is subjected to strict time or production quotas constitutes an accommodation of her limited ability to maintain concentration, persistence or pace. *Cf. Ealy*, 594 F.3d at 516-17 (moderate limitations in ability to maintain concentration, persistence, or pace are not necessarily accommodated by an RFC for low stress, simple, routine, or unskilled work as such limitations may not reflect a plaintiff's inability to meet quotas or work at a consistent pace). As plaintiff has failed to specify any additional accommodation the ALJ was required to incorporate, the Court

17

finds the ALJ's RFC for no "strict time or production requirements" appropriately accommodates her supported moderate functional limitations in maintaining concentration, persistence or pace.

Finally, plaintiff argues that the ALJ erred in weighing Dr. Whitaker's opinion by failing "to consider the longitudinal treatment." (Doc. 16 at 12-13). Plaintiff contends that the ALJ erred by giving "significant weight" to Dr. Haskins' opinion because she did not have the opportunity to review Dr. Whitaker's treatment notes, which were dated after Dr. Haskins' opinion, and by giving more weight to Dr. Lester's opinion as he examined plaintiff only once whereas Dr. Whitaker's opinion was based on over a year of observations during treatment. This argument is nothing more than a reconfiguration of plaintiff's assertion that the ALJ should have given greater weight to Dr. Whitaker based on his status as a treating psychiatrist and a disagreement with how the ALJ addressed these conflicting opinions, which has already been addressed above.

It is the Commissioner's function to resolve conflicts in the medical evidence. *Felisky*, 35 F.3d at 1036 (6th Cir. 1994); *Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Sec'y of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). As discussed above, the ALJ gave "good reasons" under *Wilson* for giving "little weight" to Dr. Whitaker's opinions, *i.e.*, its lack of evidentiary support and inconsistencies with his own treatment notes and other record evidence. *See Drumm v. Astrue*, No. 3:09-cv-62, 2010 WL 1258082, at *7 (S.D. Ohio Feb. 19, 2010) (Report and Recommendation), *adopted*, 2010 WL 1258221 (S.D. Ohio Mar. 26, 2010) (ALJ not required to give treating physician controlling, or even great, weight where doctor's opinions were internally

18

inconsistent and unsupported). *See also Wilson*, 378 F.3d at 544 (ALJ not required to give treating source opinion most weight where it is "inconsistent with other substantial evidence in [the] case record."); *see also* SSR 96-2p ("controlling weight may not be given to [a medical source] opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record."). Further, the evidence of record substantially supports the ALJ's decision to give "significant weight" to the opinions of Dr. Lester and Dr. Haskins. Accordingly, the ALJ's decision complies with agency regulations, is supported by substantial evidence, and should not be disturbed. *See* 20 C.F.R. 404.1527(d)(2); *Kinsella*, 708 F.2d at 1059.

Plaintiff's assignments of error regarding the weight afforded to the medical opinions of record should be overruled.

2. <u>The ALJ's finding that plaintiff does not meet or medically equal Listing 12.05C is supported by substantial evidence.</u>

Listing 12.05 provides in pertinent part:

Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

A claimant will meet Listing 12.05 for mental retardation "only '[i]f [her] impairment satisfies the diagnostic description in the introductory paragraph" and the criteria of subsection

C. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App.

19

1 § 12.00(A)).  Accordingly, to satisfy Listing 12.05C, plaintiff must show (1) "significantly subaverage general intellectual functioning"; (2) "deficits in adaptive functioning" which initially manifested during the developmental period (i.e., before age 22); (3) a valid IQ score between 60 through 70; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function.  *Daniels v. Comm'r*, 70 F. App'x 868, 872 (6th Cir. 2003).

"*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)).  Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM-IV, p. 49.

Plaintiff argues that she meets Listing 12.05C because: (1) she scored a 65 on the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) IQ test administered during her consultative examination with Dr. Lester; (2) both the ALJ and Dr. Lester impermissibly discounted the IQ testing results; and (3) her testimony and Dr. Whitaker's opinion support a finding that she is disabled due to her mental impairments.  (Doc. 16 at 15-17).  Plaintiff asserts that Dr. Lester should not have discounted her IQ score of 65 given that he noted her need for reminders on correct instructions when carrying out multi-step instructions.  (Doc. 16 at 15,

citing Tr. 234). Plaintiff further asserts that the GAF scores of record, ranging from 45 to 50, evince her inability to maintain employment. (*Id*.).

The Commissioner asserts the ALJ correctly determined that plaintiff did not meet or medically equal the criteria of Listing 12.05C because there is no evidence establishing that she had deficits in adaptive functioning which manifested before the age of 22. (Doc. 19 at 8). The Commissioner also notes that the ALJ's finding is substantially supported as there is no medical opinion or diagnosis in the record which provides that plaintiff is mentally retarded. (*Id*. at 9). The Commissioner further contends that there is no record evidence establishing that plaintiff has any other deficits of adaptive functioning which would support a finding that she is mentally retarded. (*Id*. at 10).

Plaintiff's second assignment of error should be overruled as the ALJ's determination that she does not meet or equal Listing 12.05C is substantially supported by the record evidence. At the outset, the Court notes that there is no evidence that establishes that plaintiff suffers from "deficits in adaptive functioning" which manifested before she was 22 years old. Without this, plaintiff cannot meet her burden of showing that her "impairment satisfies the diagnostic description in the introductory paragraph" of Listing 12.05. *Foster*, 279 F.3d at 354. *See also Daniels*, 70 F. App'x at 872. The ALJ could reasonably have found that plaintiff does not meet or equal Listing 12.05 on this basis alone. Nevertheless, the ALJ's decision is otherwise supported by substantial evidence.

The ALJ reasonably relied on Dr. Lester's conclusion that plaintiff functions in the borderline range of intelligence rather than the mentally retarded range. Dr. Lester's conclusion is well-supported by his consultative examination findings and the evidence of record. Dr. Lester took into account plaintiff's subjective reports, educational history, work history, daily

21

activities, IQ score, and presentation during his examination. (Tr. 230-36). Dr. Lester acknowledged that plaintiff reported that "she was slow learning" and quit school in seventh grade; was currently listed as a childcare provider for the Department of Human Services; and was fired from a grocery store for "attitude problems." (Tr. 231-32). Dr. Lester further observed that plaintiff exercised adequate personal hygiene; gave relevant and coherent, though brief and vague, responses; gave up easily; and was occasionally defensive. Dr. Lester reported that plaintiff did not exhibit any psychomotor retardation or agitation during the examination. (Tr. 232-33). Dr. Lester found plaintiff to be alert and fully oriented; she was able to give her age and date of birth and correctly recall the current President and Vice President; she recalled only one of five objects after a five minute delay and gave upon the task; and she twice gave up on the Serial 3 Task Backward, but completed it with encouragement with three mistakes. (Tr. 233). Dr. Lester opined that the "overall clinical impression of [plaintiff's] cognitive functioning is within the borderline range." (*Id.*). Dr. Haskins concurred and determined that plaintiff had an IQ in the borderline range based on Dr. Lester's examination results. (Tr. 240, 246). Further, Dr. Whitaker opined that plaintiff did not have a low IQ or reduced intellectual functioning. (Tr. 99). Drs. Lester and Haskins' opinions are supported by Dr. Lester's examination findings and are consistent with Dr. Whitaker's opinion that plaintiff does not have intellectual deficits. It was therefore reasonable for the ALJ to rely on these opinions in finding that plaintiff is not mentally retarded and, thus, does not meet or medically equal Listing 12.05C.

Plaintiff relies heavily on her IQ score of 65 from Dr. Lester's examination in asserting that she meets the 12.05C criteria. However, plaintiff ignores Dr. Lester's opinion that "[s]he is capable of comprehending and completing simple and routine [activities of daily living] tasks at home and showed no problems with comprehension" during the examination and that he

assessed her as being capable of understanding, remembering, and following instructions for simple and some multi-step repetitive tasks. (Tr. 235). Regarding the IQ score, Dr. Lester noted that plaintiff had a Full Scale IQ of 65, but he opined that this was "a low estimate of her actual functioning." (Tr. 234). Dr. Lester explained that plaintiff is "likely functioning in the borderline range. Her verbal expression and reasoning skills are below average as are her perceptual organizational skills, alertness to details, and planning abilities." (*Id.*). Dr. Lester's complete opinion suggests that plaintiff is capable of "at least repetitive work tasks" (Tr. 236); thus, the IQ score of 65, taken alone, does not demonstrate that plaintiff meets or medically equals Listing 12.05C. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675-76 (6th Cir. 2009) (affirming ALJ finding that plaintiff did not meet Listing 12.05 despite valid IQ score of 69 where record did not support finding that plaintiff had adaptive-skills limitations).

Plaintiff asserts that Sixth Circuit case law mandates acceptance of the IQ score despite Dr. Lester's diagnosis of borderline intellect instead of mental retardation. (Doc. 16 at 16-17) (citing *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454 (6th Cir. 2012)). In *Dragon*, the Sixth Circuit questioned the appropriateness of invalidating IQ scores where a consultative examiner determined that they did not accurately represent the plaintiff's intellectual functioning. *Dragon*, 470 F. App'x at 461-63. In *Dragon*, the ALJ determined that the plaintiff did not meet Listing 12.05C despite a full scale IQ score of 50 because the consultative examining psychiatrist determined that the plaintiff was not mentally retarded but of borderline intelligence. *Id.* at 461. The Sixth Circuit held the ALJ erred in discounting the IQ score because the examiner's reports contained clinical findings consistent with intellect in the moderately retarded range. *Id.* at 462. The Sixth Circuit concluded that while ALJs "may choose to disregard I.Q. scores when those

scores were undermined by a doctor's full evaluation[,]" they may not disregard them where the evaluation serves "to reinforce the I.Q. scores rather than undermine them." *Id.*

In the instant case, the ALJ did not err in disregarding plaintiff's IQ score of 65 as Dr. Lester's clinical findings, unlike those in *Dragon*, are not consistent with her IQ score. For example, Dr. Lester observed that plaintiff was capable of carrying out multi-step instructions with reminders and categorized her perceptual organizational skills, planning abilities, and attention to detail as falling in the "below average" range. (Tr. 234). Dr. Lester further reported that plaintiff did not demonstrate any problems with comprehension during his examination and opined that she had only moderate problems with maintaining attention and concentration. (Tr. 235-36). In contrast, the examiner in *Dragon* reported that the plaintiff functioned "well below average" and demonstrated attention and concentration abilities in the moderately retarded range. *Dragon*, 470 F. App'x at 462. As Dr. Lester's clinical findings support his opinion that plaintiff's IQ score of 65 was not an accurate representation of her intellect, *Dragon* is distinguishable and the ALJ did not err in discounting plaintiff's low IQ score.

Moreover, treatment records from Centerpoint and plaintiff's own reports support the ALJ's finding that plaintiff does not meet or equal Listing 12.05. Treatment notes from Centerpoint include observations that plaintiff is cooperative and pleasant and that she has fair insight and judgment, as well as Dr. Whitaker's suggestions that plaintiff begin job training. (Tr. 425, 427-28, 430-31, 433). Further, plaintiff reports that she is capable of taking care of her children, including feeding them, picking them up from school and getting them ready for bed. (Tr. 195). Plaintiff also reports that she is capable of attending to her personal care (Tr. 202), does light household chores, including laundry and washing dishes (Tr. 196), and regularly shops for groceries and clothes. (Tr. 196). Plaintiff also has experience as a certified day-care

24

provider. (Tr. 232). This evidence supports the ALJ's finding that plaintiff does not have deficiencies in adaptive functioning sufficient to meet the criteria of Listing 12.05. *See West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) (ability to care for daily needs, pay bills, shop for groceries, use public transportation, interact with friends and neighbors, and engage in other activities supports finding that plaintiff is not deficient in adaptive functioning). Consequently, the ALJ's finding that plaintiff does not meet or equal Listing 12.05C is supported by substantial evidence and should be affirmed.

       3.  The ALJ did not err in assessing plaintiff's credibility.

      Plaintiff argues the ALJ erred in discounting her credibility on the basis of purported inconsistencies between her testimony that her inability to get along with others precludes employment and her reported activities of daily activities. Plaintiff maintains that her ability to talk with a neighbor and interact with family members is not inconsistent with a determination that she is incapable of work due to limitations in social functioning caused by her severe depression and anxiety. Plaintiff further contends that the ALJ impermissibly determined that plaintiff was capable of employment based on these interactions as they do not equate to the ability to work on a "regular and continuing basis." (Doc. 16 at 13) (quoting 20 C.F.R. § 404.1527(c) (identifying that engaging in activities such as self-care and club activities are not substantial gainful activities)). For the following reasons, the ALJ's credibility finding is supported by substantial evidence.

      It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,*

25

246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Plaintiff's argument mischaracterizes the ALJ's credibility decision. Notably, the ALJ did not discredit plaintiff's testimony on the basis of inconsistencies with her reported social interactions with friends and family. The ALJ discussed this evidence in connection with his finding that plaintiff did not meet or equal a mental impairment listing because, *inter alia*, she had no more than moderate difficulties in social functioning. *See* Tr. 20, citing Tr. 428. Plaintiff's argument that the ALJ improperly considered this evidence in assessing plaintiff's credibility is without merit.

In any event, the ALJ's finding that plaintiff's subjective statements are not fully credible is supported by substantial evidence. The ALJ explained his credibility as follows:

> At the hearing, [plaintiff] alleged she cannot get along with other people or be around others without panic attacks. The treatment notes and her own testimony, however, reflect improvement with medication, while abstinent from marijuana abuse, and with stability in her living circumstances. Indeed, [plaintiff]'s most severe symptoms correlate with her living situation and homelessness. She appears significant improved with a stable environment and without marijuana abuse, which suggests that the severity of her symptoms is not solely due to mental impairment. She continues to take care of her children, complete household chores, and improve social skills. In March 2011, Dr. Whitaker told her to work with her case manager for vocational or job skills training (Exhibit 9F, pages 11, 13). Most significantly, his treatment notes do not reflect the frequency of panic attacks to which [plaintiff] testified. They seem to indicate that these attacks occur infrequently – three weeks prior to one appointment – rather than on a daily or twice daily basis (*see* Exhibit 9F, page 5). Still, the undersigned finds her symptoms credible to the extent that she should be restricted from any jobs with more than occasional and superficial contact with [others] or strict time or production requirements.

Tr. 27-28.

As stated above, Dr. Whitaker's treatment notes show that plaintiff's mood and affect improved throughout the course of her treatment. *Compare* Tr. 434, 436, 438, 442, 444 (from June 2010 to January 2011 plaintiff consistently reported feeling depressed and presented with a labile, tearful, and subdued affect) *with* Tr. 425, 427-28, 430, 432 (in March, May, and June 2011, plaintiff reported feeling "good," and more at ease and stable and her affect improved throughout the notes from "mildly blunted" to "mildly blunted/pleasant" to "pleasant, not tearful"). The reported and observed improvement in plaintiff's mood corresponds with her moving in with her mother after a stay at a shelter due to mold in her prior apartment. (Tr. 432, 436). Further, plaintiff reported to her case manager that she stopped using marijuana because her prescribed medications were providing more relief than the drug. (Tr. 416 - on February 24, 2011, plaintiff reported she had not smoked marijuana since August 2010). This evidence

27

substantially supports the ALJ's finding that plaintiff's testimony that she is functionally disabled due to her mental impairments was not fully credible as it was inconsistent with the improvement demonstrated in her treatment notes.

The ALJ's credibility finding is further supported by Dr. Haskin's opinion that plaintiff was only partially credible due to inconsistent statements in the record regarding her level of education and whether she was in a specialized education program while in school, and the extent of her marijuana abuse. *See* Tr. 240. *See also* Tr. 174 (plaintiff reported finishing the eighth grade and attending special education classes in a Disability Report); Tr. 230-31 (plaintiff told Dr. Lester she quit school in seventh grade to help her 14 year old sister with her baby and was not in special classes).

As there is substantial evidence of record supporting the ALJ's finding that plaintiff is less than fully credible, plaintiff's final assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.


Date: 2/11/2014

Karen L. Litkovitz
United States Magistrate Judge


28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

EVELYN DELOACH,
      Plaintiff,

     vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:13-cv-170
Beckwith, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).